**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JASMINE TAYLOR and DAWN NOGUERA, on behalf of themselves and all others similarly situated,<br><br>         Plaintiffs,<br><br>    v.<br><br>O POSITIV, INC.,<br><br>         Defendant. | **CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Case No. 25-cv-3232 |

Plaintiffs Jasmine Taylor and Dawn Noguera, on behalf of themselves and all others similarly situated, bring this class action suit for damages and equitable relief against Defendant O Positiv, Inc. ("O Positiv" or "Defendant"). Plaintiffs allege the following based upon personal information as to allegations regarding themselves, and the investigation of their counsel, and on information and belief as to all other allegations:

# TABLE OF CONTENTS

NATURE OF THE ACTION ........................................................................... 1

THE PARTIES ............................................................................................... 3

JURISDICTION AND VENUE ...................................................................... 4

FACTUAL ALLEGATIONS ........................................................................... 4

    A.    Defendant's Aggressive Marketing Campaign Claims that URO Capsules Alter Vaginal Odor and Taste and Alleviate other Symptoms ........................................................................................... 6

    B.    Defendant's Claims are False and Misleading ...................................... 13

CLASS ACTION ALLEGATIONS ................................................................. 19

FIRST CAUSE OF ACTION .......................................................................... 24

SECOND CAUSE OF ACTION ..................................................................... 27

THIRD CAUSE OF ACTION ......................................................................... 29

FOURTH CAUSE OF ACTION ..................................................................... 31

FIFTH CAUSE OF ACTION .......................................................................... 34

SIXTH CAUSE OF ACTION .......................................................................... 36

PRAYER FOR RELIEF ................................................................................... 37

## NATURE OF THE ACTION

1.      Defendant manufactures, markets, and sells URO Vaginal Probiotic capsules ("the URO Capsules" or "URO"), a dietary supplement containing a blend of probiotic strains marketed for vaginal health. The URO Capsules are sold for up to $53.98 per thirty-serving bottle.



2.      Through aggressive marketing, Defendant claims that the URO Capsules can improve vaginal odor and taste, alleviate symptoms such as discharge, itching, and burning, and promote overall vaginal health. Defendant suggests, both implicitly and explicitly, that natural variation in vaginal odor is undesirable and unhealthy and that its URO Capsules provide a necessary fix.

 

3.     These claims are false. Vaginal odor varies from person to person and is a normal biological function that does not require intervention. When odor is caused by infection, the appropriate response is consultation with a medical professional, who may prescribe clinically proven treatments such as antibiotics or antifungals.

4.     In addition, the scientific evidence supporting the effectiveness of the specific oral probiotic strains in URO is weak. There is no clinical support for the notion that vaginal taste can be improved. Defendant's statements market the URO Capsules as treatments for medical conditions, without the scientific substantiation required for such claims.

5.     Defendant's false and misleading statements caused Plaintiffs and members of the proposed classes to pay a price premium for the URO Capsules. Had they known the truth, Plaintiffs and members of the proposed classes would not have purchased the URO Capsules or would have paid significantly less.

- 2 -

6.     Accordingly, Plaintiffs seek monetary and injunctive relief against Defendant for violating New York General Business Law ("GBL") §§ 349–50; the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and common law prohibitions on unjust enrichment.

## THE PARTIES

7.     Plaintiff Jasmine Taylor is a New York resident. She purchased Defendant's URO Vaginal Probiotic Capsules from Amazon in February 2025. Plaintiff Taylor reasonably relied on Defendant's false and misleading advertisements and would not have purchased the URO Capsules or would have paid less for the URO Capsules had she known the truth.

8.     Plaintiff Dawn Noguera is a California resident. She purchased Defendant's URO Vaginal Probiotic Capsules from TikTok Shop in January 2025. Plaintiff Noguera reasonably relied on Defendant's false and misleading advertisements and would not have purchased the URO Capsules or would have paid less for the URO Capsules had she known the truth.

9.     Defendant O Positiv, Inc. is a Delaware corporation headquartered in Los Angeles, California. Incorporated in 2020, O Positiv manufactures, markets, and sells wellness products targeted at women, including the URO Capsules and supplements for menstrual health, menopause symptoms, digestive support, skin health, and fertility. Defendant's products are available through its website and

major retailers like Amazon and Target. O Positiv describes itself as "the women's health brand that is on a mission to break taboos."[1]

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; more than 100 class members are involved; and many members of the proposed Classes are citizens of different states than the Defendant.

11.     This Court has personal jurisdiction over Defendant because it committed the tortious acts alleged herein in New York, regularly conducts business in this District, and has extensive contacts with this forum.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and Defendant transacts substantial business in this District.

13.     This Court has supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367.

## FACTUAL ALLEGATIONS

14.     Defendant markets and sells URO Capsules, a dietary supplement containing four strains of *Lactobacillus* probiotics, through its website, https://opositiv.com, as well as third-party retailers such as Target and Amazon. On

---

[1] https://www.marketwatch.com/press-release/leading-women-s-health-company-o-positiv-featured-on-tiktok-shop-super-brand-day-a5d3bd55 (last accessed June 9, 2025)

Defendant's website, a one-time purchase of a single bottle of the URO Capsules have historically been priced at $31.99, and as of June 10, 2025, are priced at $53.98.

15.    Defendant also promotes a "Subscribe and Save" option, offering the URO Capsules at $26.99 for one bottle, $24.99 per bottle for two bottles, and $24.00 per bottle for three bottles. At Target, Defendant sells the same product for $28.99 for a single bottle. At Amazon, prices vary by quantity: approximately $27.52 for one bottle, $26.60 per bottle for two bottles, and $25.65 per bottle for three bottles.



16.    Defendant claims that this product can alter vaginal odor and taste, and alleviate other physical symptoms such as discharge, itching, burning, and soreness.

17.    Through advertisements, especially social media campaigns, Defendant promotes the view that normal variations in vaginal odor are problematic and that URO Capsules provide a solution. The net impression of Defendant's advertising is that URO can treat or alleviate medical symptoms and function as a replacement for clinical care.

18.    These representations are not supported by competent and reliable scientific evidence. General vaginal odor is normal. It is not a disorder and does not need medical intervention.

19.    Vaginal odor that requires medical treatment, such as by infection—where individuals have symptoms such as vaginal malodor, burning, itching, and abnormal discharge—cannot be treated by over-the-counter supplements.

20.    Moreover, experts have expressed doubt that oral-taken probiotics, specifically the four strains in URO, have the effects that Defendant claims.

**A.    Defendant's Aggressive Marketing Campaign Claims that URO Capsules Alter Vaginal Odor and Taste and Alleviate other Symptoms**

21.    Defendant aggressively markets the URO Capsules on social media. These advertisements promote the idea that vaginal odor, in general, is bad. In one ad, a narrator asks, "Are you experiencing vaginal odor? You're not alone."[2] Elsewhere, Defendant characterizes certain vaginal odors, such as "sour," as problems requiring correction.

---

[2] https://www.ispot.tv/ad/T6Mr/o-positiv-probiotic-blend-20-off (last accessed June 9, 2025)



22.    Defendant's proposed solution is URO, which it claims will "[r]educe unhealthy vaginal odor" and "unwanted smells."[3] One advertisement asserts: "Just 2 capsules a day helps keep vaginal odor away!"



---

[3] https://www.facebook.com/ads/library/?id=1068969831398369 (last accessed June 9, 2025)

23.    Other advertisements boast that the URO Capsules will do more than just "keep vaginal odor away," but will make the vagina smell "healthy," "like nothing," "like dessert," "like heaven," "divine" or "tasty":

- "healthy" or "nothing";







- "like dessert" or "heaven";

 

- "divine" and "tasty."

 

24.    In one video advertisement, Defendant represents that the scent of a user's vagina is so improved that someone entering a car asks, "What is that smell? That you?" The other person responds, "Maybe." The first person replies, "Honey Oh my God," and begins kissing them.



25.    Defendant routinely frames URO as a necessary fix to maintain sexual appeal, tying vaginal health to desirability.

26.    For instance, another video advertisement ends with the spokesperson declaring, "You can enjoy your sex life without worrying about yeast problems," while the caption reads, "Reduce unhealthy vaginal odor – **feel fresh and confident in the bedroom**."[4] (emphasis added.)

27.    Other marketing reinforces this link: "If you're married and your love life needs an upgrade, [URO] is it," and "I feel sexier than ever and can't wait to jump in bed with my husband again."[5]

---

[4] https://www.facebook.com/ads/library/?id=1116567020311242 (last accessed June 9, 2025)

[5] https://www.facebook.com/ads/library/?id=601102136340981 (last accessed June 9, 2025)

28.    Defendant also claims the URO Capsules affect taste. Its marketing states that the URO Capsules are "[f]or healthy taste," suggesting that they make the vagina taste "like nothing" and elicit reactions such as "My vagina is dessert."






29.    Defendant further asserts that URO rebalances vaginal pH, reduces symptoms of irritation and infection, and promotes microbial health. In a video advertisement, a spokesperson for Defendant says that "itching, burning, and weird

discharge" are "all signs of a yeast issue," urging viewers to take URO to "take care of it before it becomes a problem."[6]

30.    Defendant facilitates its social media marketing campaign through various Meta accounts, including, "O Positiv," "URO", and "PopSweetly."

31.    To maximize the reach and impact of its marketing, Defendant tracks consumer behavior across digital platforms. On the URO section of its website, Defendant has embedded tracking pixels from Meta, TikTok, Twitter, Reddit, and Pinterest. These tools allow Defendant to identify users, target vulnerable audiences, and serve repeated advertising about vaginal odor and taste, and other physical symptoms.

32.    These themes appear uniformly across social media marketing and its website.

33.    On its website, Defendant markets the URO Capsules as "[f]ormulated with V-Positiv Probiotic Blend™ 5 billion CFUs for healthy vaginal odor & pH," and as "target[ing] issues at the core."[7] Under a section entitled "The Science Behind URO Vaginal Probiotic," Defendant states, "If there aren't enough Lactobacillus probiotics, the vagina's pH can become too basic, making it more susceptible to non-beneficial bacteria, which may lead to **discomfort and occasional odor**" and that the URO

---

[6] https://www.facebook.com/ads/library/?id=1116567020311242 (last accessed June 9, 2025)

[7] https://opositiv.com/products/uro-vaginal-probiotic-capsules (last accessed June 9, 2025)

Capsules' "probiotics help crowd out non-beneficial bacteria to **promote pH balance, vaginal comfort & healthy odor.**"[8]

34.    The product page reiterates the claimed benefits: "[s]cience-backed ingredients," which support healthy "Vaginal pH," "Vaginal Odor," and "Vaginal Flora."[9] Defendant further states that if "[y]ou often feel **vaginal discomfort**," "[y]ou're prone to **vaginal imbalance**," or "[y]ou're concerned about your **vaginal scent & taste**," "this is for you."[10] The packaging echoes these assertions, claiming to support healthy vaginal odor, vaginal pH, yeast balance, and vaginal flora.



**B.    Defendant's Claims are False and Misleading**

35.    Defendant's representations are false and misleading. Variations in vaginal odor are normal and not a medical problem. Yet, Defendant promotes the

---

[8] *Id.*

[9] *Id.*

[10] *Id.*

message that what is normal is actually a problem, and then markets a product as the solution.

36.    Vaginal odor, in and of itself, is neither a disease nor a deviation. According to the Cleveland Clinic, "All vaginas — including healthy ones — have a mild odor."[11] In fact, a range of smells, including "tangy or sour" odors, are common and reflect natural physiology.[12]

37.    Dr. Melanie Bone, a board-certified OB-GYN, explains: "The vagina is self-cleaning, therefore there is no medical or health-related reason for wanting to alter your vagina's odor. There is no evidence to back the claim that a particular ingredient can change vaginal odor for different women."[13] Clinical experts further caution that "[s]upplementing a healthy vaginal microbiome with a probiotic is **unlikely to produce any additional benefits**"[14] (emphasis added).

38.    In sum, the premise that normal odor requires correction is without clinical merit.

39.    Defendant blurs the line between a non-pathological state (general odor) and a pathological one (malodor). The former is a natural consequence of anatomy

---

[11] https://my.clevelandclinic.org/health/symptoms/17905-vaginal-odor (last accessed June 9, 2025)

[12] https://www.healthline.com/health/womens-health/vagina-smells#tangy (last accessed June 9, 2025)

[13] https://www.womenshealthmag.com/health/a43368085/kourtney-kardashian-lemme-gummies-review/ (last accessed June 9, 2025)

[14] https://www.juno.bio/blogs/learn/probiotics-future-of-vaginal-health?srsltid=AfmBOorD9KtN8--P5T3ZqX6ml4jWsV0QRSmRBy1tI56rEnt_-oUoDheb (last accessed June 9, 2025)

and hormonal balance. The latter, often symptomatic of bacterial vaginosis or yeast infection, requires medical intervention, typically antibiotics or antifungal medications.

40.     Defendant states, for example, that a lack of *Lactobacillus* can cause a rise in vaginal pH and increased susceptibility to "non-beneficial bacteria," leading to "discomfort and occasional odor." This language mimics clinical descriptions of bacterial vaginosis, a common vaginal infection characterized by diminished *Lactobacillus*. *See* "Bacterial Vaginosis," Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/3963-bacterial-vaginosis ("Bacterial vaginosis (BV) is a vaginal infection caused by an overgrowth of bacteria. Every healthy vagina contains bacteria. Typically, these bacteria balance each other. Sometimes, the "bad" bacteria grow too much and overpower the "good" bacteria. This throws off the balance of bacteria in your vagina and leads to bacterial vaginosis. Bacterial vaginosis may cause your vaginal discharge to have a 'fishy' odor. It can also cause vaginal irritation in some people . . . . A higher pH may indicate BV.").

41.     Dr. Jennifer Lincoln rebukes Defendant's claims in a video addressing the URO Capsules, stating unequivocally, "Vaginas are supposed to smell like vaginas, and if they don't, you should come and get checked out."[15]

42.     As Dr. Caroline Mitchell, assistant professor of obstetrics, gynecology, and reproductive biology at Harvard Medical School, notes, "More often than not, when women seek out probiotics, they're doing it in an attempt to ease discomfort

---

[15] https://www.youtube.com/watch?v=lF6FJCgdo64 (last accessed June 9, 2025)

caused by two of them: bacterial vaginosis and yeast infection."[16] But as doctors consistently explain, "[a]s long as you aren't having symptoms of an infection, your smell and taste are just fine."[17]

43.    The distinction matters. When O Positiv markets URO as a solution for "itching, burning, and soreness" and "unhealthy" odor, Defendant implies its product serves a medical purpose. Nonetheless, a footnote on its website reads: "This product is not intended to diagnose, treat, cure or prevent any disease." But the plain meaning of its advertising suggests precisely that function.

44.    Furthermore, the scientific evidence supporting probiotics for vaginal health is limited, inconsistent, and riddled with variability. As one expert article, published in November 2024, explains, the research is "**too small, and inconclusive**" to support general benefits for vaginal flora.[18] A scientific review confirms that research on vaginal probiotics yields varying outcomes, with significant differences in strains used, study designs, and populations tested.[19]

45.    Defendant ignores the fact that each vaginal microbiome is unique, shaped by factors like diet, lifestyle, genetics, and age. No single formulation,

---

[16] https://www.health.harvard.edu/blog/should-you-use-probiotics-for-your-vagina-2019122718592 (last accessed June 9, 2025)

[17] https://www.healthline.com/health/what-does-a-vagina-taste-like#takeaway (last accessed June 9, 2025)

[18] https://www.juno.bio/blogs/learn/probiotics-future-of-vaginal-health?srsltid=AfmBOorD9KtN8--P5T3ZqX6ml4jWsV0QRSmRBy1tI56rEnt_-oUoDheb (last accessed June 9, 2025)

[19] https://www.frontiersin.org/journals/microbiology/articles/10.3389/fmicb.2022.819958/full (last accessed June 9, 2025)

including URO, can work for all users. Studies confirm that probiotic success depends on "how well it interacts with the host's specific factors and bacterial strains and its ability to adapt to the host's environment and improve health."[20] These findings dismantle the pretense that URO is a universally effective product, and the weight of the evidence establishes that probiotic efficacy is highly individualized and that the underlying research is too limited, inconsistent, and heterogeneous to support the broad, categorical assertions Defendant makes.

46.     Finally, Defendant's choice of probiotic strains underscores the fiction. As Dr. Jennifer Lincoln, OB-GYN, explains, none of the four probiotics included in URO includes *Lactobacillus Crispatus*, the strain she argues is most consistently linked to vaginal health in peer-reviewed studies.[21]

47.     Dr. Brian Yeung, ND, similarly casts doubt on the URO Capsule's effectiveness, pointing out that URO is taken orally, not intravaginally: "URO isn't a vaginal suppository. It's taken orally, so that raises an important question: if you're swallowing it, how is it supposed to benefit your vagina? The honest answer, it probably doesn't."[22]

48.     Dr. Yeung notes that evidence supporting the four included strains is weak, especially for oral administration, and concludes that "[t]aking URO might slightly lower UTI risk, but it's unlikely to have a significant impact on other vaginal

---

[20] https://www.mdpi.com/2076-2607/12/8/1614 (last accessed June 9, 2025)

[21] https://www.youtube.com/watch?v=lF6FJCgdo64 (last accessed June 9, 2025)

[22] https://www.youtube.com/watch?v=fGDOmkLFh-g (last accessed June 9, 2025)

conditions like BV or yeast infections."[23] To illustrate, Yeung created the below table ranking the strength of evidence supporting each strain in the URO Capsules:

| | Evidence intravaginally | Evidence orally |
|---|---|---|
| L. acidophilus | strong | weak |
| L. rhamnosus | weak | weak |
| L. reuteri | weak | weak |
| L. fermentum | weak | weak |

All Rights Reserved. Copyright © 2025 Dr. Brian Yeung, ND.

49. More broadly, experts explain that "[p]robiotics that are inserted directly into the vagina as a pessary gel, capsule, or pill, are able to populate the vagina with *Lactobacillus* strains faster and in larger quantities than oral probiotics for vaginal health."[24] Defendant's failure to disclose this distinction misleads consumers.

50. Despite the lack of reliable scientific support, Defendant charges a significant price premium for the URO Capsules. A one-time purchase of a bottle of 60 Capsules, or 30 servings, from Defendant's website has costed $31.99 and currently costs $53.98. This inflated price is not attributable to higher manufacturing costs or demonstrably superior efficacy. Rather it stems from Defendant's marketing

---

[23] *Id.*

[24] https://www.juno.bio/blogs/learn/probiotics-future-of-vaginal-health?srsltid=AfmBOorD9KtN8--P5T3ZqX6ml4jWsV0QRSmRBy1tI56rEnt_-oUoDheb (last accessed June 9, 2025)

strategy, which capitalizes on consumers' insecurities and medicalizes normal physiology. By falsely implying that URO can treat medical symptoms and enhance sexual appeal, Defendant induces consumers to pay for effects the product cannot deliver.

51.    Defendant exploits women's concerns about health, hygiene, and desirability, positioning URO as a necessary purchase to maintain physical wellness and social acceptability. Consumers reasonably believe they are purchasing a clinically substantiated solution to serious medical or personal concerns. Consumers are misled into overpaying for a product based on false or unsubstantiated claims.

## CLASS ACTION ALLEGATIONS

52.    Plaintiffs bring this action on behalf of themselves and on behalf of the following proposed Nationwide Class, initially defined as follows:

> All individuals in the United States who purchased URO Capsules within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

53.    Plaintiff Taylor also brings this action on behalf of herself and on behalf of the following proposed New York Subclass, initially defined as follows:

> All individuals in New York who purchased URO Capsules within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

54.    Plaintiff Noguera also brings this action on behalf of herself and on behalf of the following proposed California Subclass, initially defined as follows:

> All individuals in California who purchased URO Capsules within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

55.     Excluded from the proposed Classes are Defendant and its parents, subsidiaries, affiliates, officers, and directors, and any entity in which Defendant has a controlling interest.

56.     Plaintiffs reserve the right to re-define any of the class definitions prior to class certification and after having the opportunity to conduct discovery.

57.     The claims of all class members derive directly from a single course of conduct by the Defendant. Defendant has engaged and continues to engage in uniform and standardized conduct toward the putative class members. Defendant does not differentiate, in degree of care or candor, in its actions or inactions, or the content of its statements or omissions, among individual class members.

58.     Certification of Plaintiffs' claims is appropriate because Plaintiffs can prove the elements of Plaintiffs' claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

59.     Accordingly, Plaintiffs bring this lawsuit as a class action on Plaintiffs' own behalf and on behalf of all other individuals similarly situated pursuant under Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

60.     Specifically, this action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

61.    **Numerosity** (Fed. R. Civ. P. 23(a)(1)). The members of the proposed Classes are each so numerous that their individual joinder would be impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery, and it is believed each Class includes many tens of thousands of members. The precise number of class members, and their addresses, are unknown to Plaintiffs at this time but can be ascertained from Defendant's records.

62.    **Ascertainability.** The Classes are ascertainable because their members can be readily identified using business records, and other information kept by Defendant in the usual course of business and within their control. Plaintiffs anticipate providing appropriate notice to the Classes to be approved by the Court after class certification, or pursuant to court order.

63.    **Commonality and Predominance** (Fed. R. Civ. P. 23(a)(2); 23(b)(3)). Common questions of law and fact exist as to all class members. These questions predominate over the questions affecting only individual class members. The common legal and factual questions include, without limitation:

(a) Whether Defendant's marketing claims about URO Capsules are misleading to a reasonable consumer;

(b) Whether Defendant engaged in the conduct alleged in this Complaint;

(c) Whether Defendant violated the applicable statutes alleged herein;

(d) Whether Plaintiffs and the class members are injured and harmed directly by Defendant's conduct;

(e) Whether Plaintiffs and the class members are entitled to damages due to Defendant's conduct as alleged in this Complaint, and if so, in what amounts; and

(f) Whether Plaintiffs and the class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this Complaint:

(g) whether Plaintiffs and the Classes are entitled to actual, compensatory, nominal, statutory, enhanced, and/or punitive damages;

(h) whether Plaintiffs and the Classes are entitled to injunctive, declaratory relief, or other equitable relief;

(i) whether Plaintiffs and the Classes are entitled to civil penalties; and

(j) whether Plaintiffs and the Classes are entitled to reasonable attorneys' fees and costs.

64. **Typicality of Claims** (Fed. R. Civ. P. 23(a)(3)). The claims of Plaintiffs and the putative class members are based on the same legal theories and arise from the same unlawful and willful conduct of Defendant, resulting in the same injury to Plaintiffs and the putative class members. Plaintiffs and all class members are similarly affected by Defendant's wrongful conduct, were damaged in the same way, and seek the same relief. Plaintiffs' interests coincide with, and are not antagonistic to, those of the other class members. Plaintiffs have been damaged by the same wrongdoing set forth in this Complaint.

65. **Adequacy of Representation** (Fed. R. Civ. P. 23(a)(4)). Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the class members, and they have retained counsel competent and experienced in complex class action, business competition, health care and consumer litigation. Plaintiffs and their counsel will fairly and adequately protect the interest of the class members.

66. **Superiority of a Class Action** (Fed. R. Civ. P. 23(b)(3)). A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and class members. There is no special interest in class members individually controlling the prosecution of separate actions. The damages suffered by individual class members, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the class members individually to redress effectively the wrongs done to them. And, even if class members themselves could afford such individual litigation; the court system could not, given the tens or even hundreds of thousands of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

67. **Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief** (Fed. R. Civ. P. 23(b)(1) and (2)). In the alternative, this action may properly be maintained as a class action, because:

(a) the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members, which would establish incompatible standards of conduct for Defendant; or

(b) the prosecution of separate actions by individual class members would create a risk of adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c) Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Classes as a whole.

## FIRST CAUSE OF ACTION

### Violations of New York Gen. Bus. Law § 349
### (On Behalf of Plaintiff Taylor and the New York Subclass)

68. Plaintiff Taylor incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

69. NY GBL § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

70. NY GBL § 349 applies to Plaintiff Taylor and the New York Subclass because the State of New York has an interest in regulating business conduct in the region.

71. Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in his or her own name to enjoin such unlawful acts or practices, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not exceeding three times the actual damages, in addition to one thousand dollars per violation, if the court finds that the Defendant willfully or knowingly violated this section. The court may award reasonable attorneys' fees to a prevailing plaintiff.

72. The practices employed by Defendant, by which it advertises and promotes the URO Capsules, are materially misleading and deceptive within the meaning of NY GBL § 349. Defendant markets URO as a dietary supplement that can alter vaginal odor and taste and reduce symptoms like discharge, itching, burning, and soreness. Defendant's advertising campaigns falsely imply that natural variation in vaginal odor is pathological, and that the URO Capsules offer a necessary and effective fix. In reality, the product does not and cannot deliver the advertised benefits.

73.     Defendant's acts and practices deceived Plaintiff Taylor and the New York Subclass at large. Specifically, Plaintiff and the Classes reasonably relied on these misleading and deceptive representations that URO could or should be used to treat or prevent symptoms associated with vaginal infections or imbalance, improve intimate sensory traits, and deliver clinically validated health outcomes. These claims created the false impression that URO was equivalent to or superior to medical intervention, when in fact it is a standard over-the-counter dietary supplement.

74.     Plaintiff Taylor and the New York Subclass never received the benefit of their bargain. They paid a price premium for a product that was falsely marketed as having medical and health benefits it does not possess. The URO Capsules were not supported by the scientific validation Defendant claimed or implied. But for Defendant's deceptive practices, Plaintiff Taylor and the New York Subclass would not have purchased the product or would have paid significantly less.

75.     Defendant disseminated false and misleading statements throughout New York, which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and to misleading to consumers, including Plaintiff Taylor and the New York Subclass.

76.     Plaintiff Taylor and the New York Subclass have been injured by Defendant's deceptive acts or practice, suffering an ascertainable loss by paying more for a product than they otherwise would have but for the false advertising.

77.     Plaintiff Taylor and the New York Subclass have no adequate remedy at law.

78.     Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff Taylor and the New York Subclass and will continue to damage both Plaintiff and the New York Subclass and deceive the public unless enjoined by this Court.

## SECOND CAUSE OF ACTION

### Violations of New York Gen. Bus. Law § 350
### (On Behalf of Plaintiff Taylor and the New York Subclass)

79.     Plaintiff Taylor incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

80.     By reason of the acts set forth above, Defendant has been and is engaged in consumer-oriented advertising and marketing against Plaintiff Taylor and class members located in New York, engaging in business conduct that is false and misleading in material respects, in violation of NY GBL § 350, which provides, in part, that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

81.     Defendant caused statements that were untrue or misleading, and which they knew to be untrue or misleading, to be disseminated throughout New York State and elsewhere, through advertising, marketing, and other publications.

82.     Defendant's misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers were and continue to be exposed to Defendant's material misrepresentations.

83.     Plaintiff Taylor and the New York Subclass have been injured by Defendant's deceptive acts or practices.

84.    Plaintiff Taylor and the New York Subclass have no adequate remedy at law.

85.    Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff Taylor and the New York Subclass and will continue to damage both Plaintiff Taylor and the New York Subclass and deceive the public unless enjoined by this Court.

86.    Pursuant to NY GBL § 350-e, Plaintiff Taylor and the New York Subclass seek monetary damages (including actual damages or $500, whichever is greater, and minimum, punitive, or treble and/or statutory damages pursuant to NY GBL § 350-a(1)), injunctive relief, restitution, and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

87.    Defendant's conduct has also substantially injured the public, as consumers across New York were exposed to and relied upon Defendant's false advertising in deciding to purchase the URO Capsules. By marketing the URO Capsules as having effects on vaginal odor, taste, and health, despite lacking competent evidence, Defendant misled reasonable consumers into paying a premium for a product that cannot deliver the advertised benefits. The widespread deception not only caused financial harm to consumers but also perpetuated false medical narratives about vaginal health, thereby exploiting consumer insecurities and diverting individuals from seeking appropriate medical care.

88.    Defendant's conduct thus caused real-world harm and poses an ongoing risk of further injury if not enjoined.

### THIRD CAUSE OF ACTION

**Violations of Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750, *et seq.***
**(On Behalf of Plaintiff Noguera and the California Subclass)**

89.    Plaintiff Noguera incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

90.    Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

91.    Plaintiff and other California Subclass members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

92.    The URO Capsules that Plaintiff (and other similarly situated California Subclass members) purchased from Defendant were "goods" within the meaning of California Civil Code § 1761(a).

93.    By engaging in the actions, representations, and conduct set forth in the Complaint, Defendant has violated, and continues to violate §§ 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA.

94.    In violation of § 1770(a)(5), Defendant's acts and practices constitute improper representations that the goods it sells have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have.

95.    In violation of § 1770(a)(7), Defendant's acts, practices, and omissions constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another.

96.    In violation of § 1770(a)(9), Defendant has advertised goods or services with intent not to sell them as advertised.

97.    Defendant's acts, practices, and omissions, set forth above, led customers to falsely believe that the URO Capsules are a dietary supplement that can alter vaginal odor and taste and reduce symptoms like discharge, itching, burning, and soreness. Defendant's advertising campaigns falsely imply that natural variation in vaginal odor is pathological, and that the URO Capsules offer a necessary and effective fix. In reality, the product does not and cannot deliver the advertised benefits.

98.    Plaintiff Noguera reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the efficacy of the URO Capsules an important factor in deciding whether to purchase the products. The representations and omissions were a substantial factor in Plaintiff's decision to purchase the products.

99.    Defendant's violations of the CLRA directly and proximately caused injury in fact and damages to Plaintiff Noguera and the California Subclass. Absent Defendant's misrepresentations and omissions, Plaintiff would not have purchased the URO Capsules or would have paid substantially less for them.

100.    Plaintiff Noguera seeks relief for violations of the CLRA in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Subclass. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the products have no market value, whereas that showing is not required for restitution. Plaintiff reserves the right to amend the Complaint to seek damages under the CLRA.

101.    Plaintiff Noguera also seeks injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the URO Capsules. Injunctive relief is appropriate because Defendant continues to deceptively market the URO Capsules as a dietary supplement that can alter vaginal odor and taste and reduce symptoms like discharge, itching, burning, and soreness. Plaintiff would like to purchase products from Defendant in the future if she could have confidence regarding the truth of Defendant's marketing claims, but in the absence of injunctive relief she will be left to guess whether the claims are accurate. Injunctive relief is therefore necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff and the California Subclass, which cannot be achieved through available legal remedies.

### FOURTH CAUSE OF ACTION

**Violations of California Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiff Noguera and the California Subclass)**

102.    Plaintiff Noguera incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

103.    California Business & Professions Code, sections 17200, *et seq.* (the "UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

104.    Defendant's false and misleading advertising claims regarding the URO Capsules violate all three prongs—unlawful, unfair, and fraudulent—of the UCL.

105.    First, Defendant's representations and omissions regarding the URO Capsules are unlawful because they are misleading to a reasonable consumer and violate the CLRA, FAL, and NY GBL, as alleged herein.

106.    Second, Defendant's conduct violates the "unfair" prong of the UCL because Defendant's representations and omissions regarding the URO Capsules are illegal, immoral, unscrupulous, and substantially injurious to consumers, and the negative impact on consumers outweighs any reasons, justifications, or motives for Defendant's conduct.

107.    Third, Defendant's conduct violates the "fraudulent" prong of the UCL because Defendant's representations and omissions are likely to deceive members of the public.

108.    Plaintiff Noguera reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the efficacy of the URO Capsules an important factor in deciding whether to purchase the products. The representations and omissions were a substantial factor in Plaintiff's decision to purchase the products.

109.   As a direct and proximate result of Defendant's violations of the UCL, Plaintiff Noguera and the California Subclass have suffered injury in fact and have lost money. Plaintiff and the California Subclass paid an unwarranted premium for the URO Capsules and/or were denied the benefit of the bargain.

110.   Absent Defendant's misrepresentations and omissions, Plaintiff Noguera would not have purchased the URO Capsules or would have paid substantially less for them.

111.   Plaintiff Noguera seeks relief for violations of the UCL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Subclass. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the products have no market value, whereas that showing is not required for restitution.

112.   Plaintiff Noguera also seeks injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the URO Capsules. Injunctive relief is appropriate because Defendant continues to deceptively market the URO Capsules as a dietary supplement that can alter vaginal odor and taste and reduce symptoms like discharge, itching, burning, and soreness. Plaintiff would like to purchase products from Defendant in the future if she could have confidence regarding the truth of Defendant's marketing claims, but in the absence of injunctive relief she will be left to guess whether the claims are accurate. Injunctive relief is therefore necessary to prevent Defendant from continuing to engage in the unlawful

conduct and to prevent future harm to Plaintiff and the California Subclass, which cannot be achieved through available legal remedies.

### FIFTH CAUSE OF ACTION

**Violations of California False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On Behalf of Plaintiff Noguera and the California Subclass)**

113.    Plaintiff Noguera incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

114.    The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

115.    The FAL prohibits not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public.

116.    Defendant violated section 17500 when it advertised and marketed the URO Capsules through the unfair, deceptive, and misleading representations and omissions disseminated to the public that the URO Capsules are a dietary supplement that can alter vaginal odor and taste and reduce symptoms like discharge, itching, burning, and soreness. Defendant's advertising campaigns falsely imply that natural variation in vaginal odor is pathological, and that the URO Capsules offer a necessary and effective fix. In reality, the product does not and cannot deliver the advertised benefits.

117.    Plaintiff Noguera reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the efficacy of the URO Capsules an important factor in

- 34 -

deciding whether to purchase the products. The representations and omissions were a substantial factor in Plaintiff's decision to purchase the products.

118.    As a direct and proximate result of Defendant's violations of the FAL, Plaintiff Noguera and the California Subclass have suffered injury in fact and have lost money. Plaintiff and the California Subclass paid an unwarranted premium for the URO Capsules and/or were denied the benefit of the bargain.

119.    Absent Defendant's misrepresentations and omissions, Plaintiff Noguera would not have purchased the URO Capsules or would have paid substantially less for them.

120.    Plaintiff Noguera seeks relief for violations of the FAL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Subclass. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the products have no market value, whereas that showing is not required for restitution.

121.    Plaintiff Noguera also seeks injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the URO Capsules. Injunctive relief is appropriate because Defendant continues to deceptively market the URO Capsules as a dietary supplement that can alter vaginal odor and taste and reduce symptoms like discharge, itching, burning, and soreness. Plaintiff would like to purchase products from Defendant in the future if she could have confidence regarding the truth of Defendant's marketing claims, but in the absence of injunctive

relief she will be left to guess whether the claims are accurate. Injunctive relief is therefore necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff and the California Subclass, which cannot be achieved through available legal remedies.

## SIXTH CAUSE OF ACTION

### Unjust Enrichment
### (On Behalf of Plaintiffs and All Classes)

122.    Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

123.    Plaintiffs and the Classes conferred a benefit on Defendant in the form of payments for the URO Capsules.

124.    Defendant accepted and retained these payments, even though it misrepresented the nature and benefits of the URO Capsules. Defendant's retention of this benefit is unjust because the URO Capsules purport to treat an issue that does not exist or exists as a medical issue that needs physician-prescribed treatment, and Defendant's representations were made without substantiation and in violation of the law.

125.    It would be unfair for Defendant to keep the money spent without compensating Plaintiffs because Defendant misled consumers into believing the URO Capsules had benefits, when in fact they do not.

126.    Defendant's conduct has therefore caused and is causing immediate and irreparable injury to Plaintiffs and the class members and will continue to both

damage Plaintiffs and the class members and deceive the public unless enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Classes, pray for relief and judgment against Defendant as follows:

A.    certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Classes, and designating Plaintiffs' counsel as Class Counsel;

B.    awarding Plaintiffs and the Classes compensatory damages and actual damages, trebled, in an amount exceeding $5,000,000, to be determined by proof;

C.    awarding Plaintiffs and the Classes appropriate relief, including actual and statutory damages;

D.    awarding Plaintiffs and the Classes exemplary and punitive damages;

E.    awarding Plaintiffs and the Classes civil penalties;

F.    granting Plaintiffs and the Classes declaratory and equitable relief, including restitution and disgorgement;

G.    enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

H.    awarding Plaintiffs and the Classes the costs of prosecuting this action, including expert witness fees;

I.    awarding Plaintiffs and the Classes reasonable attorneys' fees and costs as allowable by law;

J.   awarding pre-judgment and post-judgment interest; and

K.   granting any other relief as this Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: June 10, 2025

Respectfully submitted,

<u>/s/ Raphael Janove</u>
Raphael Janove
**JANOVE PLLC**
500 7th Ave., 8th Floor
New York, NY 10018
Tel: (646) 347-3940
Email: raphael@janove.law

**ZIMMERMAN REED LLP**
Caleb L. Marker (*pro hac vice forthcoming*)
Ryan J. Ellersick (*pro hac vice forthcoming*)
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel: (877) 500-8780
Email: caleb.marker@zimmreed.com
Email: ryan.ellersick@zimmreed.com